OPINION
PER CURIAM.
In a dispute between the Virginia Highlands Airport Commission and its airport manager, Dixie McVey, over how to respond to a freedom of information request submitted by a local newspaper, the Commission terminated McVe/s employment. On her claim that the Commission violated her First Amendment rights, the district court entered summary judgment against her, concluding that she did not have a viable First Amendment claim and that the Commission members were protected by qualified immunity. We affirm.
I
Virginia Highlands Airport (“Airport”), a small regional airport located in Washington County, Virginia, is governed by the *632 Virginia Highlands Airport Commission (“Commission”). The Commission is composed of seven appointed members and, at the times relevant to this action, was chaired by Kenneth Stacy. The Commission meets monthly to develop policies and regulations and to review operations. Committees of the Commission also meet from time to time. The Commission delegates the day-to-day operations of the Airport to an airport manager, who, for the period from 1989 until July 1996, was the plaintiff, Dixie McVey.
At its monthly meeting on March 11, 1996, the Commission discussed a handwritten list presented to it of the hangar tenants who were at the time delinquent in their rental payments to the Airport. The parties agree that this list included the name of one of the Airport commissioners. They also agree that the list contained at least one error.
Two days after the meeting, on March 13, 1996, the Abingdon Virginian, a local newspaper, submitted a request to the Commission under the Virginia Freedom of Information Act (“FOIA”), requesting the names and addresses of delinquent hangar tenants who were discussed at the March 11 meeting. The newspaper also requested copies of the notice and minutes of all meetings, going back several months.
Finally, it requested documents relating to complaints made to the Commission about the behavior of Richard Kiser, one of the commissioners, and Robert Owen, an Airport employee.
Because the Virginia FOIA law required a response within five days, Chairman Stacy met with McVey shortly after receiving the request for approximately three hours to address the response that should be made. Stacy testified later in his deposition that during that meeting, he instructed McVey to produce as part of the Commission’s response the handwritten list of delinquent tenants that had been discussed at the March 11 meeting. He also testified that he instructed McVey not to create documents in order to respond to the request, an instruction that McVey denies having received.
A day after Stacy and McVey met, McVey sent the Commission a long letter, dated March 19, 1996, in which she described the documents that she did and did not have in response to the FOIA request. She included 22 pages of incident reports relating to Kiser and Owen. She also created and included a new list of delinquent tenants’ names. And finally she indicated that “[t]he Commission members did not make a public record of [some] meetings” and also that “[t]here were no public notices given by the Commission of [some] Meetings.”
Upon receiving McVey’s March 19 letter, Stacy became unhappy with her proposed approach and her failure to follow Stacy’s instructions, and this unhappiness only aggravated a preexisting concern that Stacy had had about McVey’s use of the Airport’s fax machine for personal business.
A few days later, on April 5, 1996, McVey wrote Stacy another letter, indicating that she believed that the production of the delinquent tenant list as discussed at the March 11 meeting would violate FOIA because it contained known errors. She wrote further that “I must in all candor inform you that I will not intentionally make a false or misleading response.”
The differences between the Commission and McVey over the Commission’s response to the FOIA request came to a head on April 8, 1996, when the Commission sent its FOIA response to the newspaper. In its cover letter, the Commission certified the attached packet as “correct,” and all of the commissioners signed the *633 letter, although some commissioners qualified their certification. The Commission asked McVey to sign the certification letter, but she refused. Accordingly, at Stacy’s request, she wrote a separate letter, dated April 8, stating that she would not certify all of the documents, but only those she had assembled and presented to the Commission. In particular, she would not certify the accuracy of “documents stamped received April 4, 1996.” Those documents were minutes of three Commission committee meetings on February 28, March 3, and March 6,1996, that had been prepared after the FOIA request was received from the newspaper. Each set of committee meeting minutes, however, was signed by at least two commissioners, and the commissioners uniformly testified that these minutes were accurate. The only change made from what actually occurred was to delete from the March 6 development committee meeting the reference to a complaint made against McVey.
Stacy sent McVey a letter, expressing the Commission’s unhappiness with the response she made to the newspaper, as well as with her March 19 letter. Stacy charged McVey with violating her fiduciary duty and wasting public funds in creating documents that Stacy had specifically instructed McVey not to do. The letter also disputed McVey’s characterizations of Commission meetings and concluded:
I, as well as other Commission members, view your recent actions, as pointed out in this letter, as insubordination. This letter is to be placed in your personnel file and these actions will be discussed further with the Airport Commission and at your next annual performance review.
McVey angrily responded to the Commission with a letter dated April 18, 1996, calling the Commission’s allegations “misleading and defamatory” and requesting a public apology from the Commission. McVey pointed out the hypocrisy in censuring her for creating an internal document while responding to the FOIA request when other commissioners had created minutes for the February 23 and March 3 committee meetings. McVey concluded her letter as follows:
It is now very clear to me that Mr. Stacy and various members of this Commission are attempting to retaliate against me for my effort to accurately supply the information requested by the Abingdon Virginian and my refusal to acquiesce in an attempt to drive-up the expense and level of difficulty of obtaining information from a FOIA request. I will not stand for this. Short of a public apology from each member of the Virginia Highlands Airport Commission who voted to publish the April 8, 1996 letter and its expungement from all records, I will seek the full measure of redress available to me.
Upon receiving this letter, the Commission suspended McVey, “pending investigation of conduct which may be cause for disciplinary action” and, at its July 15 meeting, voted to give McVey formal notice that the Commission was considering termination of her employment. In the Commission’s letter giving McVey notice of its action, the Commission described in detail the charges against McVey, including insubordination, the giving of misleading statements to the Commission and the public, the misuse of Commission property, unsatisfactory performance, conflict of interest, behavior which disrupted the orderly transaction of Commission meetings, and incompetence and inefficiency.
After McVey refused to appear for a pre-termination hearing, the Commission terminated her employment, on July 31, 1996.
*634 McVey commenced this action against the Commission and its members, alleging, in several counts, a First Amendment violation, denial of due process, defamation, and wrongful discharge. She demanded $750,000 in compensatory damages and $350,000 in punitive damages, as well as expungement of her personnel file and reinstatement. On the defendants’ motion, the district court dismissed all claims except McVey’s First Amendment claim, and it refused to rule on the defendants’ claim of qualified immunity until the record had been developed further. From this ruling, the defendants filed an interlocutory appeal. We affirmed the district court and remanded the case for further proceedings to develop the record on qualified immunity. McVey v. Stacy, 157 F.3d 271 (4th Cir.1998).
On remand and after discovery, the parties submitted cross-motions for summary judgment. The district court granted the defendants’ motion on all remaining counts, dismissing the First Amendment claim with prejudice and the state law claims without prejudice. The court also concluded that the defendants were entitled to qualified immunity.
This appeal followed, challenging the district court’s ruling on the First Amendment claim.
II
In determining whether the defendants were protected from McVey’s First Amendment claims by qualified immunity, we must first determine “whether a constitutional right would have been violated on the facts alleged.” Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If a violation is established by the existing facts, then we must determine whether the right was “clearly established.” Id. This two-step approach permits courts to “elaborate the constitutional right with greater degrees of specificity.” Id. at 207.
McVey claims that she was “discharged for refusing to certify the correctness of documents the [Commission] submitted to a newspaper in response to a FOIA request and for explaining her reasons for so refusing in [her April 8] letter to the newspaper,” in violation of the First Amendment. In Pickering v. Board of Education, 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), which sets forth the requirements of a First Amendment claim, the Court held that a government employee’s “exercise of Ms right to speak on issues of public importance may not furnish the basis for his dismissal from public employment.” To establish a First Amendment claim on this basis, a public employee must demonstrate that “(1) the [employee] speaks as a citizen about matters of public concern and (2) the [employee’s] interest in exercising free speech is not outweighed by the countervailing interest of the state in providing the public service the [employee] was hired to provide,” and (3) “protected speech played a ‘substantial’ role in the termination decision or was ‘a motivatmg factor.’ ” Stroman v. Colleton County Sch. Dist., 981 F.2d 152, 156 (4th Cir.1992) (citation omitted).
To satisfy the first prong that her employment was termmated for speaking as a citizen on a matter of public concern, McVey argues that her April 8 letter to the newspaper fulfilled that requirement. In that letter, she stated:
With regard to the package of information submitted to you in response to the referenced request, please be advised that I do not “certify” in any way to some documents included in that package. The documents in the package were compiled partially from Airport *635 Commission records and partially from documents submitted to me by Members of the Airport Commission on April 4, 1996 and stamped received on that date. I can only verify the documents which were assembled and presented to the Virginia Highlands Airport Commission for their review in order to respond to your request, which documents did not include those documents stamped received April 4,1996.
The documents date-stamped April 4 were in fact minutes from the three recent committee meetings that McVey did not attend and that were prepared by commissioners after the Commission received the FOIA request. Because McVey did not see these documents before April 4, she somehow suspected that something was untoward or inaccurate about them.
While this innuendo is implied in McVey’s April 8 letter, her actual statement to the newspaper seeks more to protect herself from exposure from anything untoward that the Commission may have done. Regardless of her motive, McVey has not been able to present any evidence that the minutes were inaccurate or that their creation was in any way illegal. Indeed, the only evidence presented to the district court was by commissioners who testified that the minutes were accurate. Moreover, while the committee meeting minutes were prepared after the newspaper’s March 13 FOIA request, they documented very recent committee meetings dated February 23, March 3, and March 6, occurring within 30 days before the request. McVey offers no legal authority to support her claim that minutes may not be prepared within weeks after a meeting is held and that minutes prepared in that time frame would be untimely or illegal.
Accordingly, McVey’s letter of April 8 could not be aimed at exposing any illegality in the public sector. Rather, it was, at most, crafted to protect her reputation or lessening her risk as a manager in the public sector, based on a suspicion of wrongdoing. Thus, by writing such a letter, McVey is not speaking as a citizen on a matter of public concern, but as manager on behalf of the Commission, and in so speaking as a manger she separated herself from the Commission’s approach without any legal justification for doing so.
Matters of public concern protected by the First Amendment do not include “[pjersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest.” Stroman, 981 F.2d at 156. In Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Court looked to whether speech “relat[ed] to any matter of political, social, or other concern to the community.” The Court in Connick concluded that because the speech did “not seek to bring to light actual or potential wrongdoing or breach of public trust” in the office, it was not of public concern. Id. at 148 (emphasis added).
So too in this case, McVey could not and has not attempted to demonstrate that the minutes from the committee meetings in late February and early March 1996 were in any way inaccurate or untoward and therefore she failed to establish the first prong of her claim that she was speaking “as a citizen about matters of public concern.” Stroman, 981 F.2d at 156. On the contrary, she appeared to be speaking on a matter of personal concern to protect her personal stature.
McVey has failed also to satisfy the second prong of the Stroman test — whether the employee’s interest in free speech outweighs that of the government in providing efficient services. 981 F.2d at 156. This question focuses on the disruption— or potential disruption — of government *636 services because of the speech. Connick, 461 U.S. at 151.
While McVey suggests that she had a legitimate interest in publishing unlawful actions, she has not advanced any unlawfulness in either the timely preparation or the substance of the minutes prepared by commissioners for the three committee meetings in question. As a consequence, her efforts to bring disrepute to the Commission by distancing herself from it was based on groundless suspicions and created public disruption.
As we indicated in our earlier opinion, “a public employee who has a confidential, policy-making, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employer.” McVey, 157 F.3d at 278. McVey certainly had a “confidential, poli-cymaking” role at the Airport as its highest ranking operations employee. In this context, we conclude that the Commission’s interest in public confidence and institutional harmony clearly outweighs any interest she may have had in venting her unfounded suspicions. McVey, as the highest ranking Airport official with nearly complete control over its day-to-day operations and confidential information, must have a productive and harmonious working relationship with the Commission. Because the Commission reasonably believed that MeVey’s actions concerning the FOIA request permanently disrupted this relationship, it was justified in terminating her employment as the highest ranking operations officer.
Ill
Because we conclude that McVey has failed to demonstrate at least two of the necessary elements for establishing a First Amendment claim, we need not reach the second inquiry under qualified immunity— whether her constitutional right was “clearly established.” But we note in passing that in Cromer v. Brown, 88 F.3d 1315, 1326 (4th Cir.1996), we explained that “only infrequently will it be ‘clearly established’ that a public employee’s speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a ‘particularized balancing’ that is subtle, difficult to apply and not -yet well-defined.” (internal quotation marks and citation omitted). Thus, even if McVey had demonstrated a valid First Amendment claim, she would have still faced the perhaps insurmountable obstacle of proving that her right, deriving from the complex application of the Stroman test, was clearly established in the factual circumstances of this case.
Accordingly, we affirm the judgment of the district court.

AFFIRMED.